THE STATE v. DEWITT, Appellant.

Division Two, October 31, 1899.

1. **Indictment:** LANGUAGE OF STATUTE. If a statute describes a whole offense and the indictment is in the language of the statute, it is sufficient, and need not be more specific.

2. ————: ————: STEALING CATTLE. The statute makes it a felony for any person to take, steal or carry away any neat cattle belonging to another, and the indictment was in the language of the statute and described the property alleged to have been stolen as "two head of neat cattle." *Held*, that the indictment was sufficient and was not open to the objection that it failed to describe the cattle alleged to have been stolen.

3. ————: ————: ————: INTENT. It is not necessary in an indictment which charges the defendant with feloniously stealing, taking and carrying away two neat cattle belonging to a person named, to allege what defendant's *intent* was. These words imply that his intent was to take them without right or leave, with the intent wrongfully to keep them.

4. **Continuance:** ABUSE OF DISCRETION. Where the case has never been continued before on defendant's motion, and there is no objection to the form of the defendant's application for a continuance, nor to the time of its presentation, and it alleged that his defense is an alibi, and names several witnesses by whom he could establish his defense, all of whom had been timely subpoenaed, and for all of whom attachments had been issued, which could not be served on a part of them because of their temporary absence from the county, and which was served on the others but they could not be produced because of sickness, the application sets out a good ground of continuance, and it was an abuse of the court's discretion to deny it.

5. **Sufficiency of Evidence:** APPELLATE PRACTICE. If there is substantial evidence tending to show defendant's guilt, the sufficiency of the evidence to support the verdict will not be considered by the appellate court.

6. **Judge's Oral Remarks to Jury.** Oral remarks by the trial judge to the jury, whether meant as instructions or not, must be objected to at the time, and can not be objected to for the first time in a motion for a new trial.

*Appeal from Texas Circuit Court.*—Hon. L. B. Woodside, Judge.

Reversed and remanded.

Barton & Dooley for appellant.

(a) In a criminal prosecution nothing is taken by intendment. State v. Austin, 113 Mo. 542. It is an elemental principle in criminal pleading that the indictment must allege every substantive fact that is necessary to establish the guilt of a defendant. State v. Reed, 117 Mo. 613. When a particular intent is an element of the offense it must be charged. State v. Pinger, 57 Mo. 246; State v. Campbell, 108 Mo. 614; State v. Hesseltine, 130 Mo. 468. While much is said in the books about the felonious and criminal intents, still just what must pass through a man's mind to make his taking larceny, has been seldom discussed. But it seems clear that a fraudulent intent on the part of the thief to deprive the owner of his ownership in the stolen property and to wrongfully appropriate the same is an essential element of every larceny. State v. Lambert, 21 Mo. App. 303; State v. Powell, 4 L. R. A. 291; Witt v. State, 9 Mo. 671; State v. Conway, 18 Mo. 325; State v. Ware, 62 Mo. 601; State v. Homes, 17 Mo. 381; State v. Shermer, 55 Mo. 86; State v. Campbell, 108 Mo. 613; State v. Lackland, 136 Mo. 30. Stealing, taking and carrying away without this intent is not larceny. State v. Homes, 17 Mo. 379; State v. Campbell, 108 Mo. 613. It may, however, amount to a trespass. Witt v. State, 9 Mo. 663; State v. Moore, 101 Mo. 328. (b) To individualize the transaction the indictment must with reasonable certainty state what was stolen. 2 Bishop's Crim. Proc., 699. This court has approved indictments for theft of "certain neat cattle, to wit, one cow" (State v. Crow, 107 Mo. 341), and "certain cattle, to wit, one steer" (State v. Lawn, 80 Mo. 241),

but it is believed that no case can be found tolerating so indefinite a description as the one now under consideration.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1) The intent with which the act is done. is fully expressed and contained in the words "feloniously did steal, take and carry away." These words, as used in the statutes and indictment, mean knowingly, without any claim or pretense of right, with intent wholly to deprive the owner of the property, or to convert it to the use of the taker. When the indictment, as in the case at bar, charges the act to have been done "feloniously" and in that connection uses the word "steal" the essential criminal intent is thereby properly alleged. It is the intent which makes the taking a felony, and it is included in such word when properly alleged. State v. Casteel, 53 Mo. 124; State v. Ware, 62 Mo. 597; State v. Williams, 92 Mo. 247. (2) The indictment in question follows the language of the statute in describing the property and alleges it to have been "two head of neat cattle." State v. Donegan, 34 Mo. 67. By the use of the term "two head of neat cattle" defendant was informed that he was charged with stealing two head of cattle of the bovine species, which sufficiently individualized the transaction to acquaint him with the crime charged. (3) The granting or refusing of a continuance is largely within the discretion of the trial court and nothing but an abuse of that discretion will warrant the appellate court in interfering with it. State v. Parker, 106 Mo. 217; State v. Walker, 69 Mo. 274; State v. Bailey, 94 Mo. 311; State v. Jewell, 90 Mo. 467; State v. Day, 100 Mo. 242; State v. Banks, 118 Mo. 117; State v. Turlington, 102 Mo. 642. Every presumption will be indulged in favor of the action of the trial court in its ruling upon an application for a continuance. State v. Farrow, 74 Mo. 531; State v. Gamble, 108 Mo. 500; State v. Luke, 104 Mo. 563; State v. Pagels, 92 Mo.

300. Comparing the evidence with the allegations of proof contained in the application for a continuance, it will be observed that the testimony of the absent witnesses could not, from what is alleged in the application, change the result. Now, this court has frequently held that, when the whole case is presented in the appellate court, and the testimony of the witnesses absent could not, from what is alleged in the application for a continuance, change the result, it is not reversible error to overrule such application, and this court will not interfere with the application of the lower court. State v. Warrell, 25 Mo. 205.

BURGESS, J.—At the November term, 1898, of the circuit court of Texas county, the defendant was convicted of grand larceny and his punishment fixed at two years' imprisonment in the penitentiary. He appeals.

The indictment was against defendant and one Rude Stark. It is as follows: "The grand jurors for the State of Missouri duly impaneled, charged and sworn to inquire within and for the body of the county of Texas and true presentment make, upon their oath present and charge that one Frank Dewitt and Rude Stark, on the 7th day of June, in the year 1897, in the county of Texas aforesaid, did then and there feloniously steal, take and carry away two head of neat cattle, the personal property of one A. C. Street, against the peace and dignity of the State."

The indictment was found at the November term, 1897. At the term next following, being the April term, 1898, the cause was continued by the State, to the fourteenth day of November, 1898. On November 25, 1898, defendants filed their motion to quash the indictment upon the ground that it is too indefinite and uncertain and does not sufficiently set forth the offense to put the defendants on their trial, and does not sufficiently describe the property stolen.

The motion was overruled.

Defendants then filed their motion for a continuance which leaving off the formal parts is as follows:

W. F. Dewitt and Rude Stark, defendants in the above entitled cause being duly sworn, upon their oath say that they can not safely proceed to the trial of said cause at this term of the court on account of the absence of J. C. Davis, Allen Largent, Mary Largent, Mile Stephens, Sarah Jane Stark and Thomas Jordan, who are material and competent witnesses for the defendant; that said witnesses reside at or near Hartshorn postoffice, Texas county, Missouri; that they believe they can procure the testimony of said witnesses to be used at the trial of said cause at the next term of this court; that they believe they can prove by J. C. Davis, Thomas Jordan, Jr., and Mile Stephens that defendants' general reputation in the neighborhood where they were born and have always resided and now live, for truth and veracity, honesty and fair dealing, is good and commendable; that defendants are informed and believe that the State intends to prove the cattle charged to have been stolen were taken from the range, and at about noon on the 7th day of June, 1897, were sold by defendants to one W. F. Trail, at Raymondville, Missouri; that they believe they can prove by said witnesses, Vallis Largent, Mary Largent and Sarah Jane Stark, that defendants were at Newton Dye's saw mill at or about half past ten o'clock of that day, and at Vallis Largent's place of abode at twelve o'clock or a little past of that day, and that it was impossible for any person to have traveled from either of the places last aforesaid to Raymondville, Missouri, by twelve o'clock or any ways near that time of that day, after they were seen at the places above mentioned, the distance being fifteen or sixteen miles; and they believe all of said facts to be true and are unable to prove said facts by any other witness or witnesses whose testimony can be as readily procured; that said witnesses are not absent by the connivance, procurement or consent of these defendants or either of them; that they caused a subpoena to be issued by the clerk of this court

on the 4th day of November, 1898, for Thomas Jordan, Jr.; that said subpoena has been returned with the following indorsement thereon: "I hereby certify that I served within writ in the county of Texas and State of Missouri, on the 10th of November, 1898, by reading to and in the hearing of George Dewitt and Griffith Jones and Thomas Jordan, Jr., and John Gideon and Samuel Hawin, can not be found in my county. J. D. Trusty, Sheriff." That they caused an attachment to be issued on the sixteenth day of November, 1898, by this court for said witness, Thomas Jordan, Jr., that said attachment has been returned with the following indorsement thereon: "Executed the within writ in the county of Texas, and State of Missouri, on the 17th day of November, 1898, by making diligent search for the within named, and that Thomas Jordan, Jr., is temporarily absent in St. Louis on business and that George Dewitt is in Shannon county. J. D. Trusty, Sheriff Texas County." That they are informed and believe that the said Thomas Jordan, Jr., is yet temporarily absent from this county. Said defendants upon their oath further say they caused a subpoena to be issued by the clerk of this court on the 9th day of May, 1898, for J. C. Davis, Mile Stephens, Vallis Largent and Sarah Jane Dye, who by marriage with Henry Stark became and is Sarah J. Stark; that said subpoena has been returned with the following indorsement thereon: "I hereby certify that I served the within writ in the county of Texas and State of Missouri on the 17th of May, 1898, by reading to and within the hearing of all the within named witnesses, but Samuel Summers, Samuel Hawin and George Dewitt. J. D. Trusty, Sheriff." That all of said witnesses were in attendance at the last term of this court and were duly notified by the judge thereof in open session to attend the trial of said cause at this term; that they caused a subpoena to be issued by the clerk of this court on the 18th day of November, 1898, for the witness, Mary Lar-

gent, under the name of Elizabeth Largent, her full name being Mary Elizabeth Largent; that said subpoena has been returned with the following indorsement thereon: "I hereby certify that I served the within writ in the county of Texas and State of Missouri, on the 24th day of November, 1898, by reading to and in the hearing of all the within named witnesses. J. D. Trusty, Sheriff." That they caused an attachment to be issued by the clerk of this court on the 24th day of November, 1898, for J. C. Davis, Vallis Largent, Mary Largent (being the same person who was subpoenaed under the name of Elizabeth Largent), M. Stephens and Sarah Jane Stark, formerly Sarah J. Dye; that said attachment has been returned with the following indorsement thereon: "Executed the within writ in the county of Texas and State of Missouri, on the 25th day of November, 1898, by attaching all the within named defendants (meaning the witnesses aforesaid) and they are not able to come to court on account of sickness. J. D. Trusty, Sheriff of Texas County." That the defendants are informed and believe that the witnesses last aforesaid are sick at their respective homes, at and near Hartshorn postoffice, Texas county, Missouri, and by reason thereof can not attend this term of this circuit court, but they believe the said witnesses will recover in time to be at the trial and testify at the next term of this court. That this application for a continuance is not made for vexation or delay merely, but to obtain substantial justice on the trial of this cause.

The motion was overruled and they saved their exceptions.

The State then dismissed the indictment as to Stark, and the trial was proceeded with as to Dewitt.

The evidence adduced on the trial was about as follows:

A. C. Street testified that in April, 1897, he turned on the range some cattle branded with an "inverted S, about three inches long, on the left hip;" that they ranged partly in Shannon and partly in Texas county; that he heard two head of

cattle had been sold at Raymondville, Missouri; that he searched on the range for his cattle; that he thinks he found all of them but two; that one was a steer and the other a heifer, yearling past, supposed to be about eighteen months old; that they were worth twelve or fifteen dollars each; and that he was unable to describe them in any manner except by age, sex and brand.

Rude Stark testified in substance that he went with defendant to Raymondville; that they got a couple of yearlings close to Mile Stephens' in Texas county; that "he (meaning defendant) said they were Street's" cattle; that they took them to Raymondville and sold them to Frank Trail for "twelve dollars the best I recollect about it;" that he could not recollect about how long ago it had been; that he "reckons it was June of last year;" that he guessed they got there long about twelve o'clock; that defendant said his name was Southers and he was going to Pulaski county; that he went with defendant and helped drive the cattle; that he was indicted for the same offense; and that he made this statement because of a promise to release him made by one of the State's attorneys.

Frank Trail testified that he lived at Raymondville, Texas county, Missouri; that he was somewhat acquainted with defendant (points him out); that defendant came to his house on June 7th, 1897; that he represented himself to be W. J Southers from Summerville; that young Stark was along, but Dewitt did the talking; that defendant "said they were moving and going to Pulaski county and that they had two two-year old cattle and they were branded on the left hip with an inverted S turned wrong side out;" that defendant proposed to sell the cattle; that he (Trail) was not then buying such cattle, but told defendant William Hamilton was; that defendant went up there, came back and said he did not want to drive the cattle further because they drove so slowly so he (Trail) finally bought both of the cattle for twelve dollars;

that Bill Hamilton got the cattle; and that defendant was
there about twelve o'clock, don't suppose they remained over
half an hour.    On cross-examination he testified that he did
not know defendants at the time they came there; that he had
known Rudge Dewitt, father of defendant, for years; that he
had met Frank Dewitt and seen him on the road and passed
him several times; that he was there when Frank was born
and he was named for the witness, "but he growed up out of
my knowledge."

1.    The first question presented for consideration is as to
the sufficiency of the indictment, which defendant insists is
bad, because of its failure to describe the cattle alleged to have
been stolen, and to allege the intent with which they were
taken.

The indictment is drawn under section 3535, Revised
Statutes 1889, by which it is made a felony for any person to
take, steal and carry away any *neat cattle* belonging to an-
other; the averment in the indictment is in the language of
the statute, and described the property alleged to have been
stolen as "two head of neat cattle."    When a statute describes
the whole offense, as in this case, by which it is made a felony
for one person to steal from another neat cattle, and the in-
dictment is in the language of the statute it is sufficient, and
need not be more specific.    [Tully v. Com., 4 Met. (Mass.)
357; State v. Krueger, 134 Mo. 262.] Kelley in his Criminal
Law and Practice, section 647, says:    "If the animal, as de-
scribed in the indictment, falls within any of the terms em-
ployed in the statute, it will be sufficient, although it might
have been better described by some other name, especially
where the statutory word is a generic term, including the name
used and others in the same general signification, as the words,
horse, cattle, sheep, hog, and the like.    Therefore, the proof
of stealing a gelding will support an indictment for stealing a
horse."

In State v. Crow, 107 Mo. 341, the indictment charged the defendant with stealing certain cattle, to wit, one cow, and on motion to quash it was held sufficient. So in State v. Lawn, 80 Mo. 241, an indictment describing the property stolen, as "certain cattle, to wit, one steer," was held sufficient. In Matthews v. State, 51 S. W. Rep. 915, the indictment charged the defendant with stealing "one head of cattle," and the description was held to be sufficient. The indictment in this case is, we think, quite as good.

As to the objection that it does not allege the intent with which the cattle were taken, it is sufficient to observe that the statute makes the felonious stealing, taking, and carrying away neat cattle belonging to another grand larceny, and renders it wholly unnecessary to allege any intent to steal, as that word itself means "to take and carry away, feloniously; to take without right or leave, and with intent to keep wrongfully" [Webster's International Dictionary, 1408], so that when the indictment avers that the persons therein named did feloniously steal, take and carry away two head of neat cattle the property of one A. C. Street, it means that they took them without right or leave, and with the intent to keep them, wrongfully.

The indictment is sufficient.

2.    It is next claimed that the court erred in refusing to sustain defendant's motion for a continuance. No objection is taken to the form of the application, nor to the time of its presentation, but the position of the State is, that its refusal or granting was discretionary with the court, and unless that discretion was abused this court will not interfere. That such is the well established ruling of this court is indisputable, but was there not an abuse of a sound discretion by the court in this case in overruling the motion? The desired evidence was material for the purpose of showing that defendant and Rude Stark were not in Raymondville at the time the cattle were sold to Trail, and therefore could not have been the

persons who sold them to him.    For this purpose the motion sets out good grounds for a continuance, complying so far as we have been able to observe with the requirements of the statute; the case had never been continued by the defendant, and it does seem to us that the motion should have been sustained.

3.    The sufficiency of the evidence to support the verdict of the jury, there being some substantial evidence tending to show defendant's guilt, will not be considered by this court.

4.    While the State's first instruction and the action of the court in failing to instruct upon the law of the case are criticised, the criticism seems to be without merit.    We are unable to see any objection to the instruction, or wherein the court failed to perform its duty in instructing the jury.

5.    Complaint is also made of the action of the court who after the jury had retired to consider of their verdict, and were brought into court for further instructions with respect to the testimony of Rude Stark, defendant alleges, remarked to them instead of instructing them in writing: "If you believe him, you believe him; and if you don't believe him you don't."    We are unwilling to believe that these remarks were intended by the court as instructions or that they were in any sense such.    If they were, then of course they should have been in writing.    [Section 4208, R. S. 1889.]    But in any event, objection should have been made, and exception saved at the time, and could not be raised for the first time in the motion for a new trial.    [State v. De Mosse, 98 Mo. 340; State v. Marshall, 36 Mo. 400; State v. Ray, 53 Mo. 345; State v. Pints, 64 Mo. 317; State v. Williams, 77 Mo. 310; State v. McDonald, 85 Mo. 539.]

For these considerations we reverse the judgment and remand the cause.    GANTT, P. J., concurs; SHERWOOD, J., absent.