[No. 3184. March 15, 1928. Rehearing Denied July 28, 1928.]

STATE v. GREENLEE.

[269 Pac. 331.]

450

Tomlinson Fort and J. C. Gilbert, both of Roswell, for appellant.

R. C. Dow, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for the State.

## OPINION OF THE COURT

WATSON, J. Indicted for murder in the first degree, appellant was convicted of voluntary manslaughter for the killing of S. A. Shepherd.

Appellant, aged 30, had come from Oklahoma a few months prior to the homicide, and was engaged in highway construction near Hagerman. On March 20, 1926, he married a girl 19 years of age. As his work near Hagerman was nearly completed, and as he intended, after its completion, to go back to Oklahoma, taking his wife with him, appellant and his wife, after the marriage, maintained their residence with the wife's parents. Appellant's wife was the mother of an illegitmate child, 2 years old, of which fact appellant was aware. For some time prior to the marriage she and deceased had been sexually intimate. Their affection for each other and their illicit relations evidently continued after the girl's marriage to appellant; resulting in the homicide 2 weeks later. On one occasion after the marriage, appellant, in looking for his wife, had found her at the place of business of the deceased at Roswell. A few days succeeding the mar-

riage deceased had taken dinner with the combined families of appellant and his father-in-law. At that time he told the father-in-law that he would kill appellant before allowing him to leave with his wife and go to Oklahoma. This was communicated to appellant, who answered, as he testifies, "I said I didn't hardly think he would; it looks like he would quit before he got that far."

On April 30, 1926, the day of the homicide, the wife, with appellant's knowledge, had gone to Roswell. When appellant came from work, he found that his wife had not returned. After waiting for some time, he arranged with one Adams to go in search of her. Adams testified that he appeared angry with his wife, and that he said he thought she was not treating him right. Appellant testified that he didn't speak of his wife in an angry tone, and was not mad, "no more than any other man would be." Asked: "Did you have any suspicion of any wrongdoing on the part of your wife," he answered: "Well, I had a little suspicion, but I didn't have it that way; no sir."

Proceeding from Hagerman toward Roswell in Adams' car, appellant met his own car, in which his wife had left for Roswell. Stopping it, he found it occupied by his wife's sister and others, and was informed that his wife and the deceased were following in the car of the deceased, and had instructed those in appellant's car to wait for them at a corner west of Dexter. Both cars then proceeded to that place, and waited for the deceased to appear, as he did, perhaps 30 minutes later. According to appellant's testimony, when the deceased stopped his car, appellant stepped up to it, found his wife seated in the lap of the deceased, with one of her arms around his neck; the deceased having one of his hands under appellant's wife's clothing. He testified:

"Some one says, 'There's Speck' (meaning appellant), and I seen him throw his hand down at the side that way (indicating) like he was going after a gun or something, and he pushed her off his lap at the same time." "I opened the door and reached in and got her." "Just as soon as she got out of the way, I shot."

"Question: Now, why did you shoot this man? Answer: I shot him because I knew he was going to kill me from the movements he made, if I didn't."

There was evidence to the effect that while waiting for Shepherd to come up appellant said, in substance, that this was not the first time that deceased had been with his wife, and that this time one of them would not go back.

It is here urged that the court erred in refusing the following tender of proof:

"The defendant at this time offers and tenders to prove by the witness now on the stand (appellant's wife) that at the place testified to where they stopped (after leaving Roswell and before meeting appellant on the occasion in (question), at this old oil well, there was an act of intercourse took place between the deceased, S. A. Shepherd, and this witness. We also offer to prove by this witness that, at the time that she drove up with the deceased at the back end of the car that the state has proved had stopped at the crossroads, and where the defendant was, that at that time she was sitting on the lap of the deceased with her arms around his neck, and that he had his right hand under her dress, and on the vulva or private parts of the witness, and that the hand of the deceased was there when he made the statement, 'There is Speck!' meaning her husband, and at the same time the husband reached the door of the car. And we offer this testimony at this time with the statement to the court that it will be connected up by this defendant's testimony that he seen that act, and also that the act of loving and embracing and kissing by the deceased and this witness was an act of lewdness which the defendant saw, and it is offered under the justifiable defense clause of our statute, and also offered for the further reason that at this time, under section 1468, that, when murder is justifiable, that is, when one person kills another who is in the act of having carnal knowledge of such person's legal wife shall be deemed justifiable, those in themselves are acts of having carnal knowledge of the wife of this defendant, and we offer to prove them at this time, and not only that we will offer to prove by this witness that it was an understanding between herself and the deceased that the car that was leading them was to be sent away from where it was, and they would immediately engage in other acts again, that is, the actual commission of the intercourse, one with the other, and it is the contention of the defense the whole thing was an act of illicit intercourse with the deceased and the wife of this defendant, and that he seen these acts, and brings it within the statutes, and that is only two of the defenses we have."

All of the testimony thus offered was admitted, except the facts of intercourse and of intention to resume it.

Appellant seeks to justify the homicide on three grounds: First, self-defense; second, the provisions of Code of 1915, § 1468; and, third, the provisions of Code of 1915, § 1471. It is claimed that the rejected evidence had a material bearing on each of these defenses.

It is urged that the deceased, meeting appellant immediately after having engaged in intercourse with his wife, would naturally be affected by the fact, and that it should have gone to the jury, as one likely to affect the state of mind of the deceased, and as an aid to them in determining which was the aggressor, and that the fact, although unknown to appellant, was material upon the same principle that uncommunicated threats are material. We need not pass upon the merits of this contention. By his tender appellant made plain the purposes for which he considered the evidence material. He made no such contention then. Indeed, so far as the record discloses, there was nothing at the time of the ruling to advise the trial court that appellant's justification would be self-defense.

Code 1915, § 1468, provides as follows:

"Any person who kills another who is in the act of having carnal knowledge of such person's legal wife shall be deemed justifiable; *provided,* that said husband and wife are not living separate but together as man and wife."

By the tender above set forth, and by a requested charge, appellant raised the question of his right to justify under that section. Its language is definite and limited. Yet counsel contend that its intent and purport are much broader; that it provides justification for homicide during the whole period between the meeting of the parties for the purpose and their separation after its accomplishment. It is argued that, if limited to the very act, the statute can, for obvious reasons, be rarely invoked. Remembering, however, that it in effect licenses homcide, it will be no objection to say that the authority is a narrow one.

Appellant relies upon a line of decisions in Texas, which has a somewhat similar statute; the leading case being Price v. State, 18 Tex. App. 474, 51 Am. Rep. 322. See, also, Morrison v. State, 39 Tex. Cr. 519, 47 S. W. 369; Giles v. State, 43 Tex. Cr. 561, 67 S. W. 411; Dewberry v. State (Tex. Cr. App.) 74 S. W. 307; Gregory v. State, 50 Tex. Cr. 73, 94 S. W. 1041; Williams v. State, 70 Tex. Cr. 275, 156 S. W. 938; Cook v. State, 71 Tex. Cr. 532, 160 S. W. 465. It is contended that these cases establish the rule that the accused is entitled to have his

claim of justification submitted to the jury where the parties are taken in such circumstances as reasonably to indicate that they have just committed, or are about to commit, the adulterous act. So it is here contended both that it was error to exclude the offered testimony and that, even without that testimony, there was sufficient to require the giving of the requested instruction.

Without discussing the Texas decisions in detail, it is to be admitted that they establish a quite liberal rule, though there is a more recent decision by that court which indicates a limit beyond which it will not go. Holman v. State, 92 Tex. Cr. 364, 243 S. W. 1093. Counsel also call attention to a somewhat similar statute in Utah, referred to in State v. Botha, 27 Utah, 289, 75 P. 731, and to an early Georgia decision (Biggs v. State, 29 Ga. 723, 76 Am. Dec. 630), and upon these authorities it is urged that the purpose and effect of statutes such as ours are to justify homicide where, at common law, and in the absence of such statute, the crime would be manslaughter. See note to State v. Yanz (Conn.) 92 Am. St. Rep. 205. Although our statute has been in effect at least since 1854, it does not seem to have been construed in this jurisdiction. It was mentioned in State v. Carabajal, 26 N. M. 384, 193 P. 406, 17 A. L. R. 1098.

Appellant's contention is presented with great force and ability, but we do not think that this is a case in which the scope and meaning of the provision must be examined. While counsel in the tender of proof, and by the requested charge, raised this defense, it seems to us that it is precluded by appellant's testimony. As seen, he did not himself profess to have believed from what he had learned, or what he at the time saw, that the deceased and his wife had just committed, or were about to commit, adultery; and, when asked directly why he shot the deceased, he replied that he did so, considering it necessary to save his own life.

Morrison v. State, supra, is cited as authority for the proposition that, if there is evidence to justify the theory that the circumstances reasonably pointed to a just completed act of adultery or one immediately to ensue, they

must be submitted to the jury as a possible justification of the homicide, even though the defendant himself disclaims that as the motive of the killing, and states that he acted in self-defense. It was undoubtedly so held in that case. But we are not persuaded that the decision is correct in principle. There is one distinction between that case and this. There, the defendant, as held, was entitled to an instruction on manslaughter, which he did not receive, and was convicted of second degree murder. That error was fatal. Its presence in the case may have caused the court to give less consideration than it otherwise would to the question here involved.

The answer to the question, it seems to us, depends upon a proper conception of the purpose of the statute. If it is designed to authorize an injured spouse to pronounce and execute sentence of death upon the destroyer of his family, the contention is sound. But nowhere does the law itself, by the ordinary processes, exact for adultery the penalty of death. In this jurisdiction it is not even a crime. So it cannot be true that this statute outlaws the adulterer and commissions the injured spouse as an executioner.

The purpose of the law is not vindictive. It is humane. It recognizes the ungovernable passion which possesses a man when immediately confronted with his wife's dishonor. It merely says the man who takes life under those circumstances is not to be punished; not because he has performed a meritorious deed; but because he has acted naturally and humanly. We in New Mexico have enacted, as has been enacted in Texas, that, instead of mitigating the homicide to manslaughter, as at common law, such circumstances justify the act. Such is the holding of the Texas, Utah, and Georgia decisions cited, and such is appellant's contention here.

If such is the correct view as to the purpose of the statute, the accused may justify either by actual knowledge, from having taken the parties in the very act, or by belief reasonably induced by the circumstances. The question is, not what the jury believed, but what did the ac-

cused reasonably believe? In the absence of direct evidence as to what the accused believed, the jury will be allowed to presume that he did believe what an ordinary man would naturally and reasonably believe under such circumstances. But, if the accused says he did not so believe, who shall dispute him? Direct evidence on the subject has destroyed the presumption. If, expressly asked by his own counsel to state why he fired the shot, he says that he acted in self-defense, why should the jury attribute the homicide to a belief which would equally justify the act, but which he does not profess to have entertained? In State v. Luttrell, 28 N. M. 393, 212 P. 739, there were circumstances in evidence to justify a belief that the homicide was committed in heat of passion, but for the testimony of the accused himself that he was calm and cool, and that he did not kill because of those circumstances, and that he acted solely in self-defense. It was there said:

"Heat of passion on the part of the appellant sufficient to reduce the crime from murder to manslaughter, is a mental condition, and indeed, he knew more about it and was better able to tell whether or not it existed than any one. Had he not so testified, a different and an interesting question would be presented."

So, here, we have a question of appellant's mental state, his belief. He alone could say with certainty what he believed. He says he believed deceased was about to take his life, but does not intimate that he believed deceased had committed, or was about to commit, adultery with his wife. An accused person need make no special defense. He need not testify. If he does not, he may demand the submission of every theory of mitigation or justification which the evidence discloses. But, if he does testify, it is fair and reasonable that he be taken at his word.

So, we think, the court did not err in refusing to submit the theory of justification under section 1468; and that the exclusion of the tendered evidence was harmless when the defendant failed to justify upon the theory to which such evidence was claimed to be pertinent.

Another justification is also urged, as it was in the trial court: That appellant acted in the lawful defense of his

wife, having reasonable ground to apprehend, and there being imminent danger, that deceased would commit a felony (Code 1915, § 1471), to wit, receive her into his automobile for the purpose of prostitution, lewdness, or assignation. Laws 1921, c. 69. It is contended that the excluded evidence was material to this defense, and that the court erred in refusing tendered instructions by which the defense was sought to be submitted. We do not consider what, if any, merit this contention may have in the abstract. The defense is here precluded just as justification under section 1468 is precluded.

█ It is contended that the court erred in submitting manslaughter. It is pointed out that "there is no contention in Greenlee's testimony that he killed Shepherd under the influence of any anger or passion." It is urged that there could be no middle ground between a deliberate slaying for revenge, as contended by the state, and a justifiable homicide, as contended by appellant. It is true that, where there is no evidence that the homicide was committed in heat of passion, manslaughter should not be submitted. State v. Trujillo, 27 N. M. 594, 203 P. 846; State v. Hunt, 30 N. M. 273, 231 P. 703. It is not to be questioned that the circumstances surrounding this homicide were sufficient to warrant a conclusion by the jury that appellant acted in heat of passion. That is true, although it was not a fact, or appellant's reasonable belief, that adultery had been, or was about to be, committed. The jury might, upon the facts in evidence, find, contrary to the contentions both of the state and of the appellant, that the slaying was done in heat of passion. State v. Smith, 26 N. M. 482, 194 P. 869, approved in State v. Trujillo, supra.

It may at first seem inconsistent that, in objecting to the submission of manslaughter, counsel insist that the court should have decided the matter solely upon appellant's testimony, which was, in effect, that he did not act in heat of passion; while, in objecting to the refusal to submit justification under section 1468, he insists that the same testimony given by him is not controlling. So it might seem that the position we here take on these two

questions is inconsistent. It is not really so. The difference is this: Manslaughter is not a defense. It is a degree of criminality attaching to a homicide. In the endeavor to escape all consequences, the defendant claims self-defense. The jury may disbelieve the claim. Yet, if the state has failed to satisfy the jury of deliberation and of malice, and the circumstances point to heat of passion, it is within its province to convict of manslaughter. On the other hand, to invoke section 1468 is to set up an affirmative defense. It is not necessarily inconsistent with self-defense. The two might conceivably be relied upon in the same case. But, if one only is assigned by the defendant himself as the cause of the homicide, it necessarily excludes the other. If appellant, when asked why he shot the deceased, had replied merely that it was because of the situation in which he found him, and the belief thereby engendered, we think there would have been no occasion to submit the theory of self-defense. This is but the converse of the situation here dealt with.

One further contention is made. Juror Moore, being examined on voir dire by the district attorney, had answered:

"Well, I can't say, hardly, I didn't have an opinion, yet the opinion would not be so strong evidence would not overcome it."

He further answered that he could lay aside, and not be influenced by, what he had heard or said. Thereupon the following occurred:

"The Court: Mr. Moore, I might state to all the gentlemen the burden is on the state to establish the defendant's guilt beyond a reasonable doubt, and that is to be done by the testimony that goes upon the witness stand, and the presumption of innocence acts as evidence in favor for the defendant, and for that reason he starts out, so far as the trial is concerned, innocent, and that means, of course, that nothing on the outside you have heard in connection with this can be considered by you, or must be considered by you, in arriving at your verdict. It means that in determining the case you must start in as though the defendant was innocent, then, if he is guilty, it must be built up by the evidence on the witness stand. The effect of that is you must not consider anything, and must be able to lay aside anything you may have heretofore heard, and listen to the evidence, and, if his guilt is established by the evidence you hear on the witness stand, to the satisfaction of the jury, and beyond a reasonable doubt, the verdict must be guilty, otherwise the verdict must be

not guilty. I take it you can hear the evidence in this case and determine it entirely upon the testimony you hear here and the instruction of the court.

"The Juror: I wish to say this: In my mind there is no question as to this defendant having killed the other man.

"The Court: That would make no difference if you haven't an opinion that would interfere with your judgment as to whether or not he is guilty or not guilty. A man can kill another one and not be guilty of a crime, you understand.

"The Juror: Yes, sir."

It is contended that the court erred by orally instructing the jury in violation of Code of 1915, §§ 2793, 2794, and 2796, which are as follows:

"Section 2793. When the evidence is concluded, and before the cause is argued or submitted to the jury, or to the court sitting as a jury, either party may move the court to give instructions on any point of law arising in the cause, which shall be in writing and shall be given or refused. The court may, of its own motion, give like instructions in writing, and all instructions shall be given by the court before argument and shall be carried by the jury to their room for their guidance to a correct verdict according to the law and the evidence."

"Section 2794. Upon the trial of any case, either civil or criminal, in the district courts held within and for the various counties of the State, all instructions to the jury asked by either party, whether given or refused, shall be in writing, and all instructions given by the court at the request of either party or upon its own motion, shall be in writing; and it is hereby made the duty of the court in all cases, whether civil or criminal, to instruct the jury as to the law in the case, and a failure or refusal so to do shall be sufficient ground for a reversal of the judgment by the supreme court upon appeal or writ of error: *Provided, however,* That the parties to the suit or their attorneys may waive upon the record the instructions in writing."

"Section 2796. Before the argument is concluded either party may request instructions to the jury on points of law, which shall be given or refused by the court. All instructions asked and the charge of the court shall be in writing. The court shall instruct the jury as to the law of the case, but shall not comment upon the weight of the evidence."

It is true that the foregoing remarks are an instruction on the law of presumption of innocence, reasonable doubt, and the duty of jurors to be guided by the evidence only. These are all matters proper to be contained in the charge and upon which a defendant might require instructions. Yet they were not made in what is usually understood as the charge of the court, nor "when the evidence is (was)

concluded." They were given in the course of qualifying the jury. It is not complained that the substance was in any respect erroneous or in conflict with any part of the charge. It is not prejudicial, nor in itself improper, that jurors in answering as to their qualification should be informed of those matters, nor that the court, in passing upon their qualifications, should know that they are so informed. The only question, therefore, is whether the express language and sound policy of the several statutory provisions are against such a procedure.

Considering the course of legislation on this subject, it appears that provisions have been adopted without much reference to pre-existing laws; so we have a number of sections in the code of 1915, including sections 2800 and 4469, not mentioned by counsel, adopted at different times, and covering about the same field, but differing somewhat in expression. In the early case of Territory v. Romaine, 2 N. M. 114, it was said that the purpose of the statute then in effect was that "the instructions should be filed with the papers in the case * * * for exception or on appeal." After the trial of that case, the Act of 1880, c. 6, § 33 (Code 1915, § 4469), provided that the jury should be allowed to take the instructions to their room. Here is to be found a purpose not admitted in the Romaine Case. Since 1880 it has evidently been the legislative policy that there should be an authoritative record to which the jurors might refer to avoid misapprehension or differences of opinion, and to which courts and counsel might refer to determine alleged error. Such are the purposes of the statute as viewed by the Supreme Court of Missouri in State v. Cooper, 45 Mo. 64. To that extent the policy is no doubt sound. It is obvious, however, that, if the requirement of writing and of delivery to the jury were to be extended to every remark the judge might have occasion to make during the progress of the trial, it would hamper his proper direction of the proceedings and multiply error. See Partelow v. N. & B. St. Ry., 196 Mass. 24, 81 N. E. 894; Wendling v. Commonwealth, 143 Ky. 587, 137 S. W. 205. The latest of our statutory provisions is section 128, Code of Civil Procedure, adopt-

ed in 1887, and now Code 1915, § 2793, above set forth. This section was taken from Missouri. Cunningham v. Springer, 13 N. M. 259, 82 P. 232. By the Missouri decisions, provision against oral instructions does not extend to ordinary rulings on evidence, State v. Moore, 117 Mo. 395, 22 S. W. 1086; State v. Good, 132 Mo. 114, 33 S. W. 790, nor to remarks not prejudicial and not intended as instructions, State v. Dewitt, 152 Mo. 76, 53 S. W. 429. An illustration of error in instructing orally is found in State v. Shipley, 174 Mo. 512, 74 S. W. 612. But we do not think that case in point here.

An oral instruction on murder in the second degree, given in connection with the charge, has been held error in this jurisdiction, and it was said that the requirement that the instructions be in writing is mandatory. Territory v. Perea, 1 N. M. 627. This was approved in Territory v. Lopez, 3 N. M. 156, 2 P. 364. But there the oral instructions were erroneous in substance, and were given in the absence of the defendant. The provisions against commenting on the weight of evidence has been said to apply only when the court is giving his instructions, and not to preclude the court from correcting counsel as to facts stated in argument. Territory v. Cordova, 11 N. M. 367, 68 P. 919; Territory v. Taylor, 11 N. M. 588, 71 P. 489. In U. S. v. Densmore, 12 N. M. 99, 75 P. 31, the court, in directing the jury to consider further of their verdict, remarked upon the expense which would be incurred if another trial became necessary. This was held not to be an instruction.

While it would perhaps not be correct to say that the court's remarks complained of are not within the letter of the statutory prohibition, we do not think that they are within the spirit or policy of the law. There can have been no prejudice to the defendant, and we do not think that a reversal for the cause assigned is warranted.

The judgment will therefore be affirmed, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.

ON MOTION FOR REHEARING

WATSON, J. We were in error in stating in the fore-going opinion that at the time the tender of proof was rejected, the trial court had not been advised that the issue of self-defense would be made. It is correctly pointed out on this motion that an announcement of such defense had been previously made. This necessary correction does not, however, vary the result. We think, nevertheless, that it was appellant's duty, in connection with his offer of proof, to call the court's attention to the theory on which he relies in this appeal, namely, that, in the nature of things, the fact that deceased was found in intimate association with appellant's wife, soon after having had intercourse with her, would so affect his state of mind as to have a bearing upon the truth of appellant's claim as to his aggressive attitude. It would be demanding much of a trial court to exact that, in the hurry and stress of a trial, he sense a theory so out of the ordinary that it has evidently occurred to counsel themselves only as an afterthought.

It is urged by counsel for appellant that from a reading of the entire record we should conclude that appellant, at the time of the homicide, must have been convinced that his wife and the deceased had been immediately theretofore sexually intimate; that, notwithstanding appellant's own statement as to his reason for firing the fatal shot, he must have been influenced further by such conviction; that the trial court, by excluding the tendered evidence, had, in effect, refused to adopt the interpretation of Code 1915, § 1468, upon which appellant relied, and the rule established by the Texas decisions; that thereby appellant was placed in a dilemma, in that, if he avowed that his reason for shooting the deceased was the conviction thus entertained by him, he would be, under the ruling of the court, admitting guilt of manslaughter, and that for that reason he was cut off from one of his legitimate defenses, and compelled to rely upon the not inconsistent self-defense.

We cannot entertain this contention. Admitting that appellant was placed in the dilemma suggested, if he chose

the method of escape now suggested, his choice was ill-considered. The ruling of the court, if erroneous, could have been correctd by exception and appeal to this court. That course was open to appellant, and afforded him a complete remedy. But if appellant saw fit to provide his own remedy, by suppressing or perverting the full truth, this court is without power to correct his mistake.

The analogy of State v. Luttrell, cited in the opinion, is questioned, and it is contended that the present case is more like State v. Martinez, 30 N. M. 178, 230 P. 379. While the present case is not greatly similar to State v. Luttrell in its facts, we think that the principle laid down in that case, and which we invoked, is clearly applicable here. In State v. Martinez the defendant did not (so far as is disclosed in the able opinion, of which former Justice Fort, of counsel for appellant in the present case, was the author) assume herself to limit and define the motives which actuated her, further than to say that she "was in anger and in fear at the same time." Thereupon it became the duty of the court to submit to the jury the several theories which found support in the circumstances of which there was proof. In the case at bar, appellant's counsel called upon him to inform the jury why he shot the deceased, and appellant then, testifying as to his own state of mind, a fact as to which he alone could give positive proof, placed before the jury the sole justification of self-defense. The distinction between the two cases is obvious and important.

After careful consideration of the present contentions, our views remain unchanged. The motion for rehearing will therefore be denied.

It is so ordered.

BICKLEY, J., concurs.

PARKER, C. J. I concur in the result reached by the court. The point urged, that the rejected evidence was competent as tending to show the probability as to who was the aggressor, was not called to the attention of the trial court, and the evidence was not offered for such

purpose. It is true that self-defense had been previously announced as one of the defenses to be relied upon; still I know of no way that the trial court can be put in error, ordinarily, unless he be expressly called upon to rule upon a question and rules erroneously. This was not done in this case.

For this reason, the judgment will have to be affirmed.