37 P.(2d) 802

STATE v. RIDDEL.

No. 3995.

Supreme Court of New Mexico.

Oct. 30, 1934.

Tom W. Neal, of Lovington, for appellant.

E. K. Neumann, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for the State.

WATSON, Chief Justice.

Appellant was indicted for the killing of his wife. Three separate counts charged, respectively, murder in its two degrees and voluntary manslaughter. The first trial resulted in a conviction of murder in the second degree. That judgment was reversed. State v. Riddel, 37 N. M. 148, 19 P.(2d) 751. That eliminated the count for murder in the first degree, and appellant was put to a second trial on the remaining counts. The present appeal is from a conviction of voluntary manslaughter.

At about 8:30 p. m. of the day in question, sounds of a fight or struggle came from the building occupied by appellant and the deceased, in front as a grocery and meat market, and in the rear as living quarters. Appellant had entered the building from the front but a few moments before. The deceased had entered slightly before that. Following these sounds, the deceased came out bearing a hammer and crying for help. After crossing the street, she fell and soon died. She had suffered numerous knife wounds, among them one severing the jugular vein. Appellant was also seen to come from the house, and was found later a block or two away with numerous cuts and bruises on his body. He was unconscious, and remained so until the next day.

The homicide occurred in a small room immediately in the rear of the room devoted to the business. Appellant's version is that, having supplied himself with a cigarette, he started from the store for the living quarters for a match. Entering this small room which was dark, " * * * something struck me on the back of the head and it seemed like I made a rush forward, the way I was going, and run into a man, and when I run into him I got another lick and turned me back another way, and seemed like I started back the way I come, and I got a lick and I don't remember anything else until the next day about eleven o'clock I come to myself in a hospital."

Evidence was adduced for the defense tending to show that the deceased, on her way home, had telephoned some one an invitation to her house. The state's evidence disclosed that, before entering from the front, she had gone to the rear. There she might have admitted or made possible the admission of the person invited. A witness for the defense testified to having seen an unidentified man come out of the building following the exit of the deceased as described, and followed by that of the appellant.

There was opinion evidence that the hammer carried by the deceased could have inflicted the bruises which appellant suffered, and that the deceased could not have inflicted these bruises after having received the fatal cut in the neck.

Otherwise than as stated, the evidence was circumstantial. It tended to show ill feeling between husband and wife, jealousy on the part of the former, and threats made by him.

Appellant contends that the first verdict, murder in the second degree, was in legal effect an acquittal of voluntary manslaughter, just as it was an acquittal of murder in the first degree. The contention is based solely on the circumstance that the pleader elected to employ three counts instead of relying, as he might have done at that time, on a single count for murder in the first degree. This result, it is argued, necessarily follows from State v. Taylor, 33 N. M. 35, 261 P. 808, and State v. Parker, 34 N. M. 486, 285 P. 490. We do not so consider. The fact that the Legislature once saw fit to require each degree of homicide relied upon to be distinctly pleaded did not vary the fact that voluntary manslaughter is an offense included in the charge of murder. Cf. State v. Burrus (on motion for rehearing), 38 N. M.

462, 35 P.(2d) 288. The first jury eliminated the element of deliberation from the case. But it found everything necessary to manslaughter, plus malice. The present jury differs with the first as to malice, but agrees as to the other elements of criminality. We find no merit in the contention.

It is also contended that there was no evidence to warrant the submission of voluntary manslaughter. Referring only to the evidence on the part of the state, counsel argues that, if appellant in fact killed his wife, he was guilty of murder in one or the other of its degrees, and could not have been guilty of manslaughter. He asserts that the state's presented theory was "that the defendant, being jealous of his wife, went out to find her, and kill her, and when he found her at home, murdered her by cutting her throat with a knife." On the other hand, he says: "The theory of the defendant was that the wife and her paramour were in the house, and when the defendant entered the dark room, the wife struck him with a hammer and continued to beat him until she was cut, the other man cutting the defendant with a knife. The deceased was killed by accident, by her paramour, while both she and her paramour tried to kill the husband, this defendant. The defendant himself was unconscious and incapable of knowing what occurred after he was first struck by some person whom he did not know when he went into the room where his wife and her paramour were."

This is to renew the discredited contention that the jury must accept one theory or the other in a case of this kind. Cf. State v. Smith, 26 N. M. 482, 194 P. 869; State v. Greenlee, 33 N. M. 449, 269 P. 331. In this connection it is interesting to note that, while the evidence offered by the state may have tended to show and might have justified a verdict of murder in the first degree, the jury was instructed that, if it should so determine, it must acquit appellant, because he had already been acquitted of, and was not on trial for, that offense. And, on the other hand, while, if appellant's testimony was true and his theory as stated he should have been exonerated, his counsel insisted upon consideration of the theory of self-defense.

It is plain that the jury was at liberty to conclude that appellant killed his wife with a deadly weapon. Unexplained, this would make a case of murder in the second degree. State v. Gilbert, 37 N. M. 435, 24 P. (2d) 280.

No one can know to a certainty what occurred in this room. We have no means of knowing just what parts of the evidence the jury accepted as true and what parts it rejected as false. The verdict reflects the inference that the homicide was committed upon a sudden quarrel or in the heat of passion. The evidence fairly lays the scene for a sudden quarrel and for heat of passion. That this inference is drawn from all the circumstances, rather than from the lips of an eyewitness, does not alter the case. State v. Smith, State v. Greenlee, supra.

The state produced George Harris, who testified that he was a justice of the peace and recalled a conversation with the appellant about a week or ten days before

the homicide in his office at Hobbs. This then occurred:

"Q. What was the subject of your conversation with Mr. Riddel? A. The subject of my conversation with Mr. Riddel was Mr. Riddel's conduct at that time and prior.

"Judge Neal: Now, if Your Honor please, we had no reason for knowing the answer to that question, and ask that it be stricken.

"The Court: Overruled.

"Judge Neal: Exception.

"The Court: You should have objected.

"Judge Neal: I understand, Your Honor, but I didn't understand."

It is the well-established general rule that, if evidence is admitted without objection, a motion to strike it is addressed to discretion. Priestley v. Law, 33 N. M. 176, 262 P. 931, 934, and cases cited. The rule is not without exception, however. One exception often stated, and as assumed in the case just cited, is that "if the question, when propounded, appears unobjectionable, the answer is to be subsequently stricken when shown to be incompetent."

In an instance like this we see no occasion for strictness in the trial court, and we are not prepared to say that, if the matter were more important, we might not have held the ruling reversible error. But this answer stands by itself. It was not followed up by any showing of what conduct of appellant was discussed or what was said about it. The only claim is that the jury must have inferred that the justice of the peace consid-

ered something Riddel had done to have been reprehensible. We are not so seriously impressed with the vice of the answer or of the ruling as to base a reversal upon it.

■■ Elmer Turrentine, a witness at the first trial, not being present at the second trial, his former testimony was read in evidence. It is claimed that a sufficient predicate was not laid for this.

A subpœna was issued and placed in the hands of the sheriff nearly three weeks before the trial. It bears return that: "After diligent search and inquiry I was unable to find the within named Elmer Turrentine within the State of New Mexico." In support of this return one deputy sheriff testified that he had received information that the witness had left Hobbs and had gone to Albuquerque to work in a grocery store, and that, acting upon that information, he had sent the subpœna to the sheriff of Bernalillo county, who had returned it with a letter to the effect that he had called upon Orion L. Turrentine, the brother of the witness, who informed him that the witness had left Albuquerque six months previously and had not been heard from since. Another deputy sheriff testified that he lived at Hobbs, knew Turrentine, had ascertained definitely that he was not in Lea county, and had asked everybody he thought would be likely to know anything about his whereabouts and could obtain no information.

Appellant argues as if the burden were upon the state to show affirmatively and by legally competent evidence that the witness was outside the state and beyond the reach

of process. We understand, on the contrary, that it is sufficient to show that "after diligent effort the whereabouts of the witnesses cannot be ascertained." Comp. St. 1929, § 45-407. We consider that the diligence shown in this case compares favorably with that shown in Territory v. Ayer, 15 N. M. 581, 113 P. 604; State v. Jackson, 30 N. M. 309, 233 P. 49; State v. Trujillo, 33 N. M. 370, 266 P. 922.

█ █ It is further objected to the Turrentine testimony that the full cross-examination could not be reproduced. A map had been used in connection with it and certain positions and movements explained by reference to it. Pains had not been taken in all instances to mark on the map or describe in the record the position, direction, or distance testified to.

After reading this testimony, we are not impressed that the cross-examination suffers substantially because of these few and slight uncertainties, or, indeed, because of the absence of the map itself, which was offered by the state and excluded on appellant's objection.

We think, however, that the objection is without theoretical or technical merit. It is not an actual cross-examination that is essential to meet the requirement of confrontation. It is the opportunity to cross-examine. Appellant had the opportunity. He might also have had a perfect record. He made such cross-examination and such record as he desired.

In this ruling we do not mean to hold that appellant's premise is sound. It may be doubted if the mere defects in the stenographer's record conclusively established the impossibility of reproducing the full cross-examination. It is not improbable that the uncertainties, such as they were, could have been explained by some one who heard and saw the original examination, or by agreement between counsel. Cf. annotation, 15 A. L. R. 495, subtitle, "Literalness of Reproduction," at page 550.

State v. Halsey, 34 N. M. 223, 279 P. 945, presented quite a different situation. There the accused had not had full opportunity to cross-examine the witness at the former trial. A line of inquiry proper to test the credibility of the witness had been disallowed. The use of his former testimony on the second trial was a repetition of the very error for which the first conviction was set aside.

Error also is claimed in the admission of the testimony of Virgil Hamby, given at the former trial, but we find nothing in the argument of this point requiring separate notice.

We conclude that the judgment appealed from should be affirmed, and it is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.