7607

## STATE v. BOYER.

1. DISPOSING OF PROPERTY UNDER LIEN.—In trial under indictment for disposing of personal property under mortgage, an instruction that defendant would be guilty if he disposed of mortgaged property with intention to defeat the lien is not error when one of the mortgages in question contained permission to sell manufactured products with bill of lading attached to draft deposited in mortgagee bank, when the sale complained of was not made in that way.

2. IBID.—Under evidence tending to show products of mortgagor mill were shipped to another mill owned by practically the same stockholders, and not paid for by the vendee mill, but used by it in its business, and refusal after notice to reship, it would have been error to direct a verdict of not guilty.

3. IBID.—In such case it is only necessary, to convict, to show that property under lien was disposed of within the State by one with notice of the lien without written consent of lienee and without payment and deposit as required by statute.

Before SEASE, J., Lee, September, 1909. Affirmed.

Indictment against J. R. C. Boyer for disposing of property under lien. From circuit judgment, defendant appeals.

*Mr. Frank G. Thompkins,* for appellant, cites: *Mortgage gave defendant right to sell:* 6 Cyc., 1041, 1044; 14 S. C., 112; 33 S. C., 475; 18 S. C., 157; 75 S. C,, 207. *Removal must be without the State:* 36 S. C., 497; 43 S. C., 200; 74 S. C., 450; 57 S. C., 264.

*Solicitor Stoll* and *Mr. J. B McLaughlin,* contra. The Solicitor cites: *Defendant guilty:* 36 S. C.. 497. *Removal within State makes out the offence:* 43 S. C., 200; 74 S. C., 450.

July 7, 1910. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The defendant was convicted and sentenced under an indictment for disposing of

property under lien in violation of sec. 337 of the Criminal Code.

The indictment describes the lien covering the property as "certain chattel mortgages in favor of the Bank of Bishopville and The Farmers Loan and Trust Co., corporations duly chartered by law, made and duly executed by J. R. C. Boyer to secure payment of five thousand dollars."

In support of this allegation the Court, over objection, permitted the State, after proof of execution, to offer in evidence a chattel mortgage dated October 21, 1908, executed by W. Newton Smith and J. R. C. Boyer, individually, and Bishopville Oil Company, J. R. C. Boyer, manager, to the Bank of Bishopville, to secure the payment of a note of the Bishopville Oil Mill for four thousand dollars, payable January 1, 1909, on all the cotton seed now on hand and hereafter purchased or otherwise acquired during the season of 1908-1909, and also all the products of every kind and description manufactured therefrom; also another chattel mortgage dated November 7, 1908, executed by Bishopville Oil Mill, J. R. C. Boyer, treasurer, and J. R. C. Boyer, individually, to the Farmers Loan and Trust Co., to secure a note of the Bishopville Oil Mill for one thousand dollars, payable January 1, 1909, on "sixty tons of good merchantable cotton seed now stored in our seed house in Bishopville."

Exception is taken to the admission of these mortgages in evidence on the ground that they were not the same as charged in the indictment. This exception was not pressed in argument, and can not be sustained, as the testimony was responsive to the indictment.

The second exception alleges error in the following portion of the charge:

"Still if the defendant, however, disposed of the products of that mill in such way and in such manner that the jury is convinced that he did it with the intention to defeat

the proposed lien, then, if he failed to have the written consent of the bank, and failed to deposit the account here within ten days, then he would be guilty under the law."

The error assigned is "that said charge is in conflict with the terms of the mortgage which gave the defendant the right to sell or dispose of the products of the mill, and his Honor, the presiding Judge, should have charged that the said mortgage, covering the products proved to have been shipped by the defendant, gave written consent for him to sell and dispose of the said products, the construction of said mortgage being a matter of law for the Court and not a matter of fact for the jury."

The mortgage dated October 21, 1908, contains this stipulation: "It is agreed that whenever any of said manufactured products are sold or disposed of subject to drafts with bill of lading attached, said drafts shall be deposited with and handled by the mortgagee, and so much of said proceeds as may be necessary to pay said note may be applied to the payment of the same as may be determined by said bank, without any additional agreement or further consent on the part of mortgagors." No other stipulation appears which might be construed as a written consent to sell or dispose of the mortgaged property, but this applies only to sales with draft and bill of lading attached, and it is not contended that in this case the sale or disposal was made in such manner.

The mortgage of November 7, 1908, does not contain the provision last above quoted. Both mortgages, however, contain a provision:

"That said mortgagor may retain possession of said goods and chattels until default be made in the payment of the said note, but if the same is not paid when due, or if before the said note is due the said mortgagor shall attempt to make way with or remove said goods and chattels, or any part thereof, from the place where they now are, or abuse

or not properly care for said property, then and in either event, the said mortgagee, or its agent, shall have the right, without suit or process, to take possession of the said goods and chattels, wherever they may be found, and may sell the same, etc."

Hence it is manifest this exception can not be sustained.

The third exception is as follows: 3. "In that his Honor, the presiding Judge, refused to charge defendant's first request, the evidence of Mr. Scarborough and the defendant showing that they construed the mortgage to give the defendant the right to sell and dispose of the property so sold or disposed, and there being no other evidence showing the sale or the disposal of the cotton seed covered by the mortgage to the Farmers Loan and Trust Co., the jury should have been instructed to bring in a verdict of 'not guilty.' "

The first request was in these words: 1. "The jury is instructed that under the testimony submitted by the plaintiff, consisting of the four thousand ($4,000.00) dollar mortgage given by the Bishopville Oil Mill and J. R. C. Boyer to the Bank of Bishopville, and the evidence of Mr. Scarborough, cashier of said bank, the contract embodied in the mortgage and explained by him shows that it was not the purpose of said mortgagor or said contract to prevent a sale or disposal of the products of the said mill in the regular course of business, and no testimony having been submitted showing a sale or disposal of the seed covered by the mortgage of the Loan and Trust Co. Bank, the jury is instructed to bring in a verdict of not guilty."

For the purpose of this exception it may be conceded that there was no testimony that the cotton seed or products thereof covered by the mortgage to the Farmers Loan and Trust Co. were sold or disposed of contrary to the statute, but as there was some testimony of a disposal by defendant of the property covered by the mortgage to the Bank of

Bishopville, contrary to the provisions of the statute, it was proper to refuse to direct a verdict of acquittal.

The testimony of Mr. Scarborough, who was cashier of the Bank of Bishopville, on this point was as follows:

"Q. Now, Mr. Scarborough, at the time you took this mortgage did you intend that the Bishopville Oil Mill should sell these products after they were manufactured? A. Yes, sir. Q. Or did you propose that they should keep them until you got ready to foreclose that mortgage? A. We had no objection to disposing of the property. Q. To sell these products did you require a part of the money paid on those products a proportionate amount as they got it in? A. Yes, sir. Q. And that was the understanding of the contract expressed in this mortgage, that they drew on people for money, they must draw on them through your bank, and you reserved the right to keep as much as you thought fair and apply it to their debt? A. Yes, sir. Q. And you did not have any objection to their making a small sale or shipment when they did not draw with bill of lading attached? A. We had no objection, if it was not a very large amount. Q. You had no objection to selling a reasonable amount? A. Yes, sir."

The testimony of defendant Boyer on this point was as follows: "Q. What had been the custom between you and Mr. Scarborough as to your selling products of the mill other than oil? A. They had no objection to us selling anything at all. We sold meal and hulls and oil stuff right along. Q. Did he require you to return the money to him for those sales? A. Yes, sir; we deposited the drafts; when we made drafts we deposited them in his bank. Q. And when the draft came back what was done with the money? A. He took out what money he thought was right in his judgment to take out and apply to the mortgage and left us to take the balance and operate with * * * . Q. And you were selling right along the meal and hulls to the farmers here? A. Yes, sir. Q.

And was expected to turn that over to the bank and make your payments was what they thought necessary? A. Yes, sir. * * * . Q. This contract between you and Mr. Scarborough, was that construed by you all or understood to give you written permission to dispose of the products? A. Yes, sir; most certainly. We did not go to him every time we wanted to make a sale. Q. This mortgage gave you the right? A. Yes, sir; that was the understanding at the time and I think he so understood it."

The foregoing testimony was not sufficient to authorize direction of verdict. The testimony upon which the State relied was to the effect that about the first of December, 1908, the defendant shipped from the Bishopville Oil Mill, at Bishopville, Lee county, S. C., to Cross Hill Mill, at Cross Hill, Laurens county, S. C., in two car load shipments, 600 sacks of cotton seed meal, worth $1.25 per sack, and 20 tons of hulls, worth $5.00 per ton; that said property was subject to the lien of the mortgage to the Bank of Bishopville; that the property was disposed of without the written consent of the mortgagee, and defendant failed to pay the debt secured by the mortgage within ten days after said disposal, and failed to deposit the amount of the debt with the clerk of Court of Common Pleas. There was testimony that practically the same persons were stockholders of both mills, although each was incorporated, and that defendant Boyer was treasurer of both mills and manager of the Bishopville mill. The defendant testified that the meal and hulls were consigned to the Cross Hill mill to be used by that mill in its business and the money to be paid to the Bishopville mill, that no price was fixed and no time was fixed for payment, and that no charge was made therefor on the books of the Bishopville mill and no bill of lading with draft was issued, as it was shipped out on consignment.

It further appeared that the Baileys, of Clinton, S. C., had a mortgage on similar property of the Cross Hill mill,

and when the meal and hulls from the Bishopville mill entered the Cross Hill mill the Baileys claimed that the property became subject to their mortgage and declined to permit its reshipment to the Bishopville mill. Notwithstanding instructions from the Bank of Bishopville to have the meal and hulls sent back to the Bishopville mill, the defendant Boyer refused to carry out the instruction, giving as his reason for not doing so that he had got into trouble for shipping the property from the Bishopville mill and did not care to get into further trouble. The result was that the property was never returned to the Bishopville mill and was never paid for by the Cross Hill mill, although disposed of by that mill, and the lien thereon defeated.

The fourth, sixth and seventh exceptions allege error in refusing to charge that if the goods were not sold, the removal, in order to constitute a disposal, must be without the State with the purpose or necessary effect of defeating the lien. The Court committed no error.

As this case does not require a consideration of the effect of a removal of property under lien beyond the limits of the State we need not refer to the cases of *State* v. *Rice,* 43 S. C., 200, 20 S. E., 986; *State* v. *Haynes,* 74 S. C., 450, 55 S. E., 118. The case presented here is a disposition of property under a lien within the State. It was not essential for the State to show that the property was disposed of with intent to defeat the lien. *State* v. *Reeder,* 36 S. C., 497, 15 S. E., 544.

It is sufficient to show that the property under lien was sold or disposed of by one with notice of the lien, without the written consent of the lienee, and without payment or deposit as required by the statute. Nor is the case as made by the State a mere removal of the property under lien from one county to another, which might be done under circumstances not affecting the lien and might not be in violation of the statute. *Whaley* v. *Lawton,* 57 S. C., 264, 35 S. E., 558, but testimony was offered from which a

jury might infer a sale or disposition in violaton of the statute.

Appellant declines to argue the fifth exception.

The judgment of the Circuit Court is affirmed.