[No. 2165, April 24, 1918.]
## STATE v. ADAMS.

### SYLLABUS BY THE COURT.

An "inhabited house," as used in section 1705, Code 1915, is a house which, at the time of the discharge of a deadly weapon within 300 yards thereof, is occupied by persons as a dwelling.

Hanna, C. J., dissenting.

Appeal from District Court, Grant County; Ryan, Judge.

Cecil Adams was convicted of unlawfully discharging a pistol within the limits of a settlement, and he appeals. Reversed and remanded, with instructions.

TERRILL & DASHIELL, of Silver City, and WEEKS & OWENS, of El Paso, Tex., for appellant.

C. A. HATCH, Assistant Attorney General, for the State.

### OPINION OF THE COURT.

PARKER, J. Appellant was tried and convicted in the district court of Grant county upon the charge of

unlawfully discharging a pistol within the limits of the settlement of Rodeo. At the conclusion of the evidence the appellant moved the court for a directed verdict of not guilty upon the ground that the evidence failed to disclose that he had discharged the pistol within 300 yards of an inhabited house, as is required by section 1705, Code 1915, under which the indictment was drawn. It appears from the evidence that the pistol was discharged by the appellant close to and within 300 yards of a house belonging to one Harry C. Wilson. The house was referred to in the testimony as the "Wilson house" and the "Country Club." There was evidence introduced to the effect that the house in question was used as a house of prostitution. There is evidence for the defendant, and not denied, that the house in question on the occasion of the shooting was unoccupied by any person; at least, no response was obtained from within when the appellant knocked on the door of the house. He had gone to the house to see the owner, Wilson, who was not there at the time, and so far as appears, no one else was there.

The offense created by statute is the offense of discharging a deadly weapon within a settlement, a "settlement" is defined in the section of the act as any point within 300 yards of an inhabited house. The section is as follows:

"Any person who shall unlawfully draw, flourish or discharge a rifle, gun or pistol within the limits of any settlement in this state, or within any saloon, store, public hall, dance hall or hotel, in this state, except the same be done by lawful authority, or in the lawful defense of himself, his family or his property, upon conviction thereof, shall be punished by a fine of not more than one thousand dollars, or by imprisonment for a term of not more than three years, or by both such fine and imprisonment, in the discretion of the court. The word 'settlement,' as used in this article, shall be construed to mean any point within three hundred yards of any inhabited house, in the state of New Mexico."

It is to be observed from the language used in this section that a distinction is made between a settlement

and any saloon, store, public hall, dance hall, or hotel. The crime consists in discharging a deadly weapon within any of the named buildings, while in regard to discharging a weapon near an inhabited house it is contemplated that the offense shall be committed outside of the house and within 300 yards thereof. This distinction we deem of considerable importance in determining the true definition of "inhabited house" as used in the statute. In regard to a saloon, store, public hall, dance hall, or hotel, it is immaterial whether any persons, other than the offender, are in these buildings when the offense is committed. On the other hand, where the offense is committed outside of a house, it must be at the time an inhabited house, a house in which persons are then living. Taking into consideration the plain object of this statute, we deem the words "inhabited house" to require that the house is at the very time when the offense is committed inhabited by people who are living there. The statute was designed to prevent the indiscriminate and careless shooting of firearms in the vicinity of dwellings where people are living at the time. In this way all danger of annoyance, fright, or accidental injury from the careless or other use of firearms in the immediate vicinity of a dwelling house was to be obviated. The statute was designed for the protection of the families living in their homes, and in this view of the statute the house must be inhabited at the very time the deadly weapon is discharged. If a dwelling house is habitually occupied by people, and they should on the occasion of the discharge of the deadly weapon be absent from such house, no harm could possibly result to them from the commission of the act. The object to be subserved by the statute would not exist under such circumstances. The offense is not malum in se, but is malum prohibitum. There is nothing illegal or immoral in discharging a deadly weapon within 300 yards of an inhabited house, and the same is an offense against the law simply because the statute so declares. If the conditions which the statute was designed

to remedy do not exist, that is, if the house is not then and there inhabited or occupied by persons, then there is no reason for the prohibition mentioned in the statute.

In this case there is no evidence whatever that this house was occupied by any person whomsoever at the time the pistol was discharged, and, on the other hand, the evidence would tend to indicate that no persons were within the house on that occasion. We define an "inhabited house," as used in this statute, as a house which at the time is occupied by persons as a dwelling. We do not wish to be understood that the house must be the dwelling house of a family. A house of prostitution may be a dwelling house within the meaning of the statute if somebody in fact is dwelling therein at the time of the discharge of the deadly weapon. But in this case there is no evidence whatever that anybody ever used this house as a dwelling place, and, upon the occasion of the offense charged, the evidence rather tends to show that no person was in the house.

For the reasons stated, the motion to instruct a verdict for the defendant should have been granted. The cause will be reversed, and remanded to the district court, with instructions to award a new trial; and it is so ordered.

ROBERTS, J. concurs.

HANNA, C. J. It is my opinion that the record discloses that the house was an inhabited one. I therefore dissent.