**118 P.2d 280**

**STATE v. SHEDOUDY.**

**No. 4600.**

Supreme Court of New Mexico.

Sept. 9, 1941.

Rehearing Denied Nov. 5, 1941.

New Mexico, "did unlawfully and feloniously, having obtained possession of certain personal property of the General Motors Acceptance Corporation by virtue of conditional sales contract, take, carry away and conceal said personal property, to-wit, one * * * Chevrolet sedan * * * of the value of more than $100, while title to said personal property was in the General Motors Acceptance Corporation, and without the consent of the title owner of said property."

The statutes under which appellant was informed against are as follows:

"Any person who, having obtained possession of any personal property from the owner or possessor thereof, under a conditional sales contract, and who prior to the vesting of the title in him pursuant to such conditional sales contract, shall sell, transfer, encumber, conceal, take, drive or carry away, or in any manner dispose of such property contrary to the provisions of such conditional sales contract, and without the written consent of the owner under such conditional sales contract, shall, if said property be of the value of one hundred dollars or more, be deemed guilty of a felony, and on conviction shall be fined in a sum not exceeding five thousand dollars, or be punished by imprisonment in the penitentiary for a period of not less than one year nor more than three years, or both such fine and imprisonment in the discretion of the court." Sec. 35-2102, N.M.Sts.1929.

Robert A. Morrow, of Raton, for appellant.

Edward P. Chase, Atty. Gen., and George H. Hunker, Jr., Asst. Atty. Gen., for appellee.

BRICE, Chief Justice.

The appellant was convicted and sentenced to the State Penitentiary upon a charge by information that he, on the 18th of August, 1938, in the County of Colfax,

"The term 'conditional sales contract' as used in this act shall be construed to mean

and include all contracts, leases, purchase leases, sale leases, or other instruments of writing which are intended to hold the title to personal property in the former owner, possessor or grantor." Sec. 35-2101, N.M. Sts.1929.

The appellant, who held the car by virtue of a conditional sales contract made in the name of his daughter, drove it from San Diego, California to Raton, New Mexico. At Raton he left it at a garage for repairs, where the holder of the legal title repossessed and stored it, allegedly because of his delinquency in making a payment due thereon.

Thereafter appellant either broke into the garage, or, as he claims, found the door open, and took the car therefrom without the consent of the holder of the legal title, or the owner of the garage. The car was found by the sheriff twenty-five miles from Raton, concealed by brush and boards, at the side of an unoccupied house. The appellant testified that he had turned the car over to one Henry Bush to be delivered by said Bush in California to the holder of the legal title; but that Bush had not so delivered it. The inference was that Bush had stolen it.

It is asserted that the trial court erred in refusing to give to the jury each of five instructions based upon the undisputed fact that the holder of the conditional sales contract had been paid all of the installments due on the car up to and including July 16, 1938, and that each of the seven payments had been made from 15 to 30 days after it became due. That the August 16th payment had been due only seven days at the time the car was placed in the garage for repairs. That this court in Giannini v. Wilson, 43 N.M. 460, 95 P.2d 209, held that the acceptance of monthly payments due upon conditional sales contracts, from 15 to 30 days after their due date, was such acquiescence in delays that a strict performance by the purchaser was waived. That therefore the appellant was within his rights in taking possession of the car and removing it from the garage where it had been stored by the representative of the holder of the legal title.

The appellant also requested an instruction to the effect that he was entitled to possession of the car for all legitimate purposes at the time he removed it from the garage.

The five requested instructions first mentioned, placed too great a burden upon the appellant. If appellant was not entitled to possession of the car at the time he took it from the garage, then he was not guilty of the crime charged, the very foundation of which was the alleged fact that he held possession by virtue of a conditional sales contract at the time he committed the acts charged in the information, if he did commit them. Had the trial court given to the jury the requested instruction the result would have been a concession on the part of the appellant that this element of the crime had been proved by the State.

The evidence of appellant's breaking into the garage and taking the

car, was admissible only to prove that it was he who did "take, drive, carry away and conceal" the car, and it should have been so limited by the trial court. It was calculated to impress the jury that appellant had stolen the car; an inference most damaging to his defense. The trial court erred in refusing to instruct the jury at appellant's request that at the time he took the car from the garage he was entitled to its possession for all lawful purposes.

Appellant requested the following instruction: "Gentlemen of the Jury, you are instructed that if you believe from the evidence *beyond a reasonable doubt* that the defendant took the car from the Chevrolet Garage in Raton, New Mexico, and sent it to the dealer in California from whom he purchased the car, or unless you are convinced from the evidence beyond a reasonable doubt that the defendant did not send the car by one Henry Bush to the dealer in California from whom he purchased the same after taking it from the Chevrolet Garage in Raton, New Mexico, then your verdict should be not guilty." (Emphasis ours.) .

This was an attempt to secure an instruction on the theory of the defense. However, the appellant did not testify that he sent the car "to the dealer in California from whom he had purchased it." He testified that he had turned it over to Bush with instructions to take it to such dealer and Bush evidently had not complied with such instructions. This, however, is rather hypercritical. The request called the

Court's attention to the fact that appellant was entitled to an instruction on his theory of the case and one should have been given. It is true, appellant accepted the excessive burden of proving "beyond a reasonable doubt" that he took the car for the purpose stated in the requested instruction, but he alone could have been injured thereby. Whether because of the form of the instruction, an error can be predicated thereon, we need not decide, as in view of another trial, no doubt a proper instruction will be given.

Counsel for appellant was interrupted in his argument, whereupon the following occurred:

"Mr. Morrow: (Out of hearing of the jury). Comes now the defendant and offers to argue to the jury that there is no competent evidence in the case as to the value of the car and no competent evidence to establish the value at one hundred dollars or more by any witness in the case, and to argue that the value of one hundred dollars or more has not been established by the evidence in the case.

"The Court: The Court is the sole judge of the law, and I have already ruled on that question by the attorney for the defendant.

"Mr. Morrow: The defendant will not be permitted to make that argument?

"The Court: No, Sir.

"Mr. Morrow: We except."

The Court had admitted the testimony regarding the cost and sale price of

the car in California, without objection from appellant. The competency of this testimony was a question of law for the Court. The appellant's remedy was to object thereto, request an instruction on the character of evidence necessary to prove value, or move for an instructed verdict because of the failure of proof. The Court did not err in denying the appellant the right to argue to the jury the competency of the testimony, where, as here, there was no instruction on the issue.

■ However, the appellant's counsel should have been permitted to argue whether the value of one hundred dollars or more had been established by the evidence. The constitutional right to representation by counsel (§ 14 of Art. 2, Constitution of New Mexico) is violated if counsel is denied the right to argue an issue of fact that must be decided by the jury. The refusal of the Court to permit this argument also violated Section 105-2412, which provides that every plaintiff and defendant shall be entitled to be heard before the jury by an attorney. This statute was violated by the Trial Court for the same reason. See State v. Taylor, 32 N.M. 163, 252 P. 984.

■ In his argument to the jury, the district attorney stated in substance that what a man usually does if his character is good is to go out and bring in witnesses to testify to his good character. Counsel for appellant moved the Court to require State's counsel to retract the statement; but the trial court denied the motion and ruled that the argument of the district at-

torney was not improper. To this ruling the appellant excepted. The Attorney General confesses error on this point, and correctly so, as we believe. Appellant was under no duty to establish his character or good reputation by witnesses; and the court erred in permitting the district attorney to so argue to the jury. We need only call attention to the annotations in 80 A. L.R. 227, the headnote of which is, "It is a rule sustained by the great weight of authority that it is improper for counsel for the prosecution, in his argument to the jury, to comment on the failure of the accused to produce evidence of his good character." Also see subsequent decisions compiled in the A.L.R. Blue Book.

It is asserted that the trial court had no jurisdiction of this cause, because of the following statute: "In any prosecution under the provisions of either Section 35-2102 or Section 35-2103 of the 1929 New Mexico Statutes, Annotated the crime may be charged to have been committed and every such person may be tried and prosecuted in any county where such conditional sales contract was filed or recorded, as the case may be." Ch. 82, N.M.L.1931.

■ This act provides that prosecution may be instituted in counties where such conditional sales contract may be recorded, but does not repeal the general law authorizing prosecutions where the crime is committed. § 147-102, 1929 Sts.Ann.

It is asserted that the Court erred in overruling appellant's motion in arrest of judgment, for reasons following:

(a) That the information is fatally defective in that it is not alleged that the acts charged to have been done by appellant were "contrary to the terms of the conditional sales contract"; and that they were done with a criminal intent.

(b) That the statute is void for uncertainty, because the elements of the crime are not prescribed so that a person of ordinary intelligence could determine the legislative intent.

(c) That the statute does not define a "conditional sales contract" as contemplated by it.

(d) That the information is fatally defective in that it is not alleged that the acts charged to have been done by appellant were done with "any criminal intent."

Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, although the terms of the statute do not require it. State v. Blacklock, 23 N.M. 251, 167 P. 714; Smith v. State, 223 Ala. 346, 136 So. 270; State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 103 A.L.R. 1301; Youngs Rubber Co. v. Lee & Co., 2 Cir., 45 F.2d 103. But the legislature may forbid the doing of an act and make its commission criminal, without regard to the intent with which such act is done; but in such case it must clearly appear from the Act (from its language or clear inference) that such was the legislative intent. Masters v. United States, 42 App.D.C. 350, Ann.Cas. 1916A, 1243.

It follows that whether a criminal intent is to be regarded as essential, is a matter of construction, to be determined from a consideration of the matters prohibited, and the language of the statute, in the light of the common law rule. State v. Blacklock, supra; State v. Hefflin, supra; Youngs Rubber Co. v. Lee & Co., supra; 22 C.J.S., Criminal Law, § 30; 14 A.J., Criminal Law, Sec. 24.

The statute (35-2102) is an adaptation of Section 21-111, N.M.Sts.1929, which provides that any chattel mortgagor who "shall sell, transfer, conceal, take, drive or carry away, or in any manner dispose of such property or any part thereof, exceeding the value of one hundred dollars, * * * without the written consent of the holder of such mortgage * * * shall be guilty," etc. This statute, or its substance, has been enacted in many of the states and often construed by the courts. If its literal language is to control, then it would be impossible to hold possession under a chattel mortgage without violating the statute. Livestock, or an automobile, could not be taken, driven or carried away for any legitimate purpose without incurring its penalty. The same may be said of property held under a conditional sales contract.

While the statute does not specifically provide that the prohibited acts must be done with a criminal intent, and therefore does not distinguish between legal and illegal selling, transferring, encumber-

ing, concealing, taking, driving or carrying away the property, any other construction is inconsistent with the object, purpose and nature of such contracts. It is manifestly designed to protect the interest of the owner of the property, possession of which has been accorded the buyer under a conditional sales contract. The wrong inheres in hindering, delaying or defrauding the owner of his right and usual opportunities to repossess his property if the covenants of the contract are breached by the buyer. To deprive the owner of these rights and facilities by sale, permanent transfer or concealment from the owner is manifestly contrary to good morals and the principles of the common law which are founded upon justice and right. The specific acts charged must have been actuated by such intent to constitute them a crime under either statute. Watson v. State, 11 Okl.Cr. 542, 149 P. 926; Tootle v. Taylor, 64 Iowa 629, 21 N.W. 115; State v. Burton, 101 Kan. 62, 165 P. 847; Mays v. State, 33 Okl.Cr. 185, 242 P. 580. There is authority to the contrary, Ellis v. State, 74 Fla. 215, 76 So. 698; State v. Boyer, 86 S.C. 260, 68 S.E. 573; Pappas v. State, 135 Tenn. 499, 188 S.W. 52; State v. Shomaker, 45 S.D. 352, 187 N.W. 630, 631, but we are satisfied that no such harsh result was intended. In the Shomaker case Justice Whiting dissenting, said:

"Under the majority opinion, even though the mortgagee was present at the sale of mortgaged property and orally consented thereto—yes, even if he should buy the property himself of the mortgagor with an oral agreement that he should, and he afterwards did, apply the purchase price on the mortgage debt—if such sale was not preceded by the execution by the mortgagee of a written consent therefor, the mortgagor, by selling such property, would commit a felony, and might be sentenced to state's prison for three years. * * *

"I cannot and will not subscribe to any ruling that can lead to such a monstrous result."

The conclusion we reach is particularly true where the offense is malum in se. This phrase is defined: "Literally 'a wrong in itself.' An act involving illegality from the very nature of the transaction, upon principles of natural, moral and public law." 38 C.J. 520.

In State v. Rogers, 31 N.M. 485, 247 P. 828, 839, we quoted from an earlier New Mexico case [State v. Adams, 24 N.M. 239, 173 P. 857] treating of discharging a pistol within a settlement, as follows: "'The offense is not malum in se, but is malum prohibitum. There is nothing illegal or immoral in discharging a deadly weapon within 300 yards of an inhabited house, and the same is an offense against the law simply because the statute so declares.'"

If there were no penal statute covering the offense we would not hesitate to say the doing of the acts which would deprive the owner of his property to his injury, without his consent would be properly classified as an act malum in se.

It is asserted that if a criminal intent must accompany a prohibited act, then the information is defective and charges no offense, in that it is not charged that the acts alleged to have been done by defendant were done with a criminal intent. It is the general rule that where a crime is created by statute, defining the offense created, it is sufficient in an indictment or information, to charge the offense in the language of the statute. State v. Alva, 18 N.M. 143, 134 P. 209. But where the letter of the statute is broader than the intent of the legislature, the information must be so drawn as to effect the legislative intent. Stropes v. State, 120 Ind. 562, 22 N.E. 773; Schmidt v. State, 78 Ind. 41.

As a criminal intent is a constituent part of the crime attempted to be charged, the failure to allege such intent would be a fatal defect. But criminal intent, if an essential element of an offense, may be charged in general terms (Sup.Ct. Rule, 35-4417) or by the use of equivalent words.

The information charges that the acts constituting the offense were "unlawfully and feloniously" done.

Webster's International Dictionary defines "felonious" as "malicious, villainous, wicked, traitorous, perfidious; in law, * * * done with intent to commit a crime."

The territorial Supreme Court stated in Territory v. Garcia, 12 N.M. 87, 75 P. 34, "Appellant also objects to the indictment because it did not say that the crime was committed with an intent on the part of the defendant. It is not necessary to go beyond the statute, and allege in specific terms that the crime was committed with intent. The intent is implied in the charge that he did it 'feloniously and unlawfully.' " To the same effect are Stephens v. United States, 9 Cir., 262 F. 957; State v. Bush, 47 Kan. 201, 27 P. 834, 13 L.R.A. 607, concurring opinion of Valentine J.; Bise v. United States, 8 Cir., 144 F. 374, 7 Ann.Cas. 165; People v. Hartwell, 166 N.Y. 361, 59 N.E. 929; Phelps v. People, 72 N.Y. 334; People v. Willett, 102 N.Y. 251, 6 N.E. 301; State v. Hughes, 31 Nev. 270, 102 P. 562; State v. Rechnitz, 20 Mont. 488, 52 P. 264; State v. Halpin, 16 S.D. 170, 91 N.W. 605; State v. Douglas, 53 Kan. 669, 37 P. 172.

Criminal intent was sufficiently charged in the information.

The information is not defective in that it is not alleged therein that the acts charged to have been done by appellant were "contrary to the terms of the conditional sales contract." The statute does not so provide.

The statute is not void for uncertainty. A person of ordinary intelligence can determine the legislative intent.

The statute defines a conditional sales contract. We have copied the statutory definition.

It is asserted that the Court erred in admitting over appellant's objection the testimony of the witness Vigil, to the ef-

fect that Frank Cordova, on whose place the car was found, had given him (Vigil) a note with instructions to deliver it to the appellant, and that he had delivered such note after reading it. He testified to the contents of the note, which was an instruction to the appellant to remove the car from Cordova's premises. This was an unsworn declaration of a party not a witness before the court to the effect that he had requested appellant to move his car. If it proved anything it was the fact that the car in question was at the writer's place and this could not be proved by such hearsay declaration. The Court erred in admitting this testimony, including the letter or its contents. Marshall v. United States, 2 Cir., 197 F. 511; People v. Colburn, 105 Cal. 648, 38 P. 1105; People v. Fitzgerald, 156 N.Y. 253, 50 N.E. 846.

█ There was no direct testimony tending to prove that the automobile was of the value of $100 or more, a fact necessary to sustain the charge. The only evidence of value was that the original cost in California on November 29, 1937, was $1,107.55, and that it was sold in California in the latter part of 1939 for $350. The State was burdened with proving the market value of the car at the time and place it was taken and concealed; and this may be done by witnesses who know the market value of second hand cars. It is common knowledge that there is a market for used cars in such cities as Raton. At another trial the evidence can be supplied without resort to the character of evidence introduced; in view of which it is unnecessary to pass upon the question. But see People v. Harris, 77 Mich. 568, 43 N.W. 1060; State v. Norman, 101 Mo. 520, 14 S.W. 661, 10 L.R.A. 35, 20 Am.St.Rep. 623; State v. Handler, 142 Kan. 455, 456, 50 P.2d 977; People v. Cole, 54 Mich. 238, 19 N.W. 968; 20 A.J., Evidence, § 372; 17 R.C.L., Larceny, § 71; 36 C.J., Larceny, § 490; 22 C.J., Evidence, §§ 133, 134.

The judgment is reversed and the cause remanded, with instructions to grant to appellant a new trial.

It is so ordered.

ZINN, SADLER, MABRY, and BICKLEY, JJ., concur.